Filed 12/16/14  In re B.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.B. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E061428 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ014732) |
| v. | OPINION |
| H.W., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and Anna M. Marchand, Deputy County Counsel, for Plaintiff and Respondent.

1

H.W. (Father) is the father of 11-year-old B.B., 10-year-old Ms.W. (Ms.), and seven-year-old Ma.W. (Ma.). The children were detained by the Riverside County Department of Public Social Services (DPSS). Father appeals from an order of the juvenile court denying his petition for modification under Welfare and Institutions Code section 388.[1] On appeal, Father argues the juvenile court abused its discretion in denying his section 388 petition. We find no error, and will affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of DPSS on January 19, 2014, when a referral was received stating L.B. (Mother) had called law enforcement after discovering Father had hit Ms.[2] Mother reported that Ms. had a one-to-two inch cut on the side of his face, but no other marks or bruises. Father reported that he had spanked Ms. twice on his bottom with a belt for acting up in church, and when he tried to hit Ms. the third time, he had accidentally hit Ms. on his face with the belt, causing the cut. Ms. reported that Father had accidentally hit his face; that Father had put peroxide and ice on his face after the incident; that Father had rarely spanked him; and that he was not afraid of Father. Law enforcement informed Father to take Ms. to the hospital to have Ms.'s face examined.

---

[1] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Mother is not a party to this appeal.

2

The children primarily lived with Father in a one-car converted garage space; and Mother's whereabouts were unknown. DPSS conducted an immediate investigation at 2:00 a.m. on January 20, 2014. Father was uncooperative during the initial investigation. Ms. reported that he was afraid of Father and that Father had been hitting him with a belt or other hard objects once a week. Ms. also reported that Mother had also hit him with a belt and other objects. Ma. confirmed that his parents had disciplined him and his older brother by hitting them with their hands, a belt, or other objects. Ma. stated that he was afraid of his parents when they hit him or his brother. B.B. also confirmed the allegations of Father's use of physical abuse with a belt on her brothers, Ms. and Ma. The social worker examined Ms. and noted that Ms. had swelling under his right eye, a cut that started from the corner of his right eye to his cheek, and irritated and scabbed skin between his upper thighs, lower stomach, and hips. Ms. also urinated in his bed every night.

Father had a criminal history that included numerous charges for battery on a spouse, as well as a history with child protective services and domestic violence with Mother.[3] In June 2009, allegations that Father had engaged in domestic violence and had hit B.B. were unfounded. In August 2009, Ms. had allegedly started a fire in the family's home. In October 2010, a child abuse allegation was found unfounded by DPSS. And, in

---

[3] Mother also had a criminal history, a history with child protective services, and a history of abusing drugs. Mother's two older children were eventually removed from her custody, and they were placed with the children's maternal aunt in a legal guardianship in 2004.

February 2011, Ms. had reported to be unable to sit down at school because of a spanking he had received by Father. He also reported a sore on his back had been caused by Mother pouring hot coffee on him. In November 2011, a referral alleged that Ms. appeared to be suffering from post-traumatic stress disorder.

On January 20, 2014, Ms. and Ma. were taken into custody and placed together in a foster home. B.B., who had been spending time with her mother, could not be located. Father had refused to disclose Mother's telephone number and claimed that he did not have an address for her. B.B. was eventually located and placed with her brothers on January 23, 2014.

On January 22, 2014, DPSS filed a section 300 petition on behalf of the children pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (g) (no provision for support), and (j) (abuse of sibling).[4] The children were formally detained at the detention hearing and the parents were provided with services and visitations pending a further hearing. Visitation for Father with Ms. was to be in a therapeutic setting with the specific goal of protecting Ms.

DPSS had arranged a visit between Father and the children for February 1, 2014. DPSS had provided clear instructions to the parents regarding the visit and both stated that they understood. The visit was to occur in a park near the paternal grandparents' residence. Father was to have supervised visits with only Ma. and B.B. Father had stated

---

[4] The petition was amended on February 7, 2014, removing the subdivision (g) no provision for support allegation as to Mother. The petition was again amended on February 18, 2014, removing additional allegations as to Mother.

4

that he understood and that once Ms. was in counseling, arrangements for visitation with Ms. would be made. Despite the specific instructions, Father ignored the parameters of the visit. The children were all taken to the paternal grandparents' home where Father made contact with Ms. The contact re-traumatized Ms.

On February 6, 2014, all three children were placed with their adult sister, V.B., and maternal grandmother.[5] While B.B. had adjusted well in her adult sister's home, Ms. had shown signs of depression, fear, and withdrawal while in placement. He had enuresis and wet his bed nightly. He had been referred to counseling and for a psychiatric evaluation. Ma. had some acting out behaviors where he had been oppositional and throwing tantrums. Ma. had also been referred for counseling and a psychiatric evaluation.

On February 14, 2014, the juvenile court found the allegations in the petition true as amended. The children were declared dependents of the court and the parents were ordered to participate in reunification services. Father's case plan required father to attend and participate in counseling, domestic violence, child abuse, and parenting education programs. Father was provided with supervised visits with Ma. and B.B. and visits with Ms. in a therapeutic setting.

---

[5] On February 5, 2014, DPSS had submitted a relative assessment for the paternal grandparents. A social worker, however, was unable to contact the grandparents via telephone after multiple attempts.

On May 12, 2014, Ma. was placed with his paternal aunt. B.B. joined her brother in her paternal aunt's home on May 19, 2014. Ms. was placed in a group home on May 12, 2014.

On May 15, 2014, Father filed a request to change court order pursuant to section 388. Father requested that the children be placed together with the paternal grandparents. He also requested that visitations between himself and B.B. and Ma. be unsupervised; that the visitations be increased from one hour to two hours per week; and that the therapeutic setting restriction between himself and Ms. be eliminated. In support, Father submitted documentation indicating that he had completed 10 sessions of his parenting program and that he had attended nine one-hour therapy sessions between February 20 and April 24, 2014.

DPSS recommended that the visits between Father and Ms. continue to be supervised and that they remain in a therapeutic setting. DPSS, however, agreed that the visits between Father and Ms. be increased only as deemed appropriate by Ms.'s therapist. DPSS noted that the therapist had indeed increased the visits from one hour to one and one-half hours. The therapist reported that the visits had been going well between Father and Ms., but opined that more time during the visits was required to establish a bond. The therapist therefore had increased Father's visits with Ms. DPSS believed that it was too early to determine if Ms. was ready for unsupervised visits with Father since Ms. and Father had only recently started working with the therapist. DPSS also had concerns that Father had anger issues that had not been addressed and that his

6

anger issues were the cause of why he had physically abused the boys. Father was unable to appropriately communicate with DPSS. When speaking with DPSS, Father would always curse, yell, be disrespectful, argue, and abruptly end conversations. During a meeting held in April 2014, Father had gotten into a verbal argument with the children's prior caretaker in front of the children and security had to be notified. DPSS had not been able to make an assessment if Father had gained insight and taken responsibility for the physical abuse as he had refused to have any contact with the social worker. DPSS had the same concerns as to his request to have unsupervised visits with B.B. and Ma. DPSS was concerned that Father had not gained insight and had continued to engage in aggressive and angry behavior.

DPSS also was not in agreement with moving the children from their respective placements. The children had been moved four times during the brief period of the dependency and DPSS did not believe another move was in the children's best interest. The moves had caused serious issues with the children's behaviors and they had finally established stability in their placements. B.B. and Ma. were placed in a stable, loving home with the paternal aunt. Ms. was also doing very well in the group home; and DPSS noted that as soon as his mental health was stabilized, placement with the paternal aunt would be considered so he would be with his siblings. Further, Father and Mother had both agreed to the placement decision during a meeting in April 2014. At that time, Father had stated that placement with the paternal aunt was the " 'best option' " for the children. Moreover, the paternal grandparents had been conditionally approved. They

were required to take a parenting class due to their prior involvement with child protective services involving substantial allegations of physical abuse. DPSS wanted the paternal grandparents to follow through with the recommendations in the event the current placement did not work out or the children had to be separated due to their behaviors.

A hearing on Father's section 388 petition commenced on June 13, 2014. At that time, Father's counsel agreed B.B.'s and Ma.'s current relative placement was appropriate, but requested that Ms. be moved out of the group home and placed with relatives. Father's counsel noted that Father was not satisfied with the care Ms. had received in the group home because on a recent visit Father had noticed Ms.'s hair was uncombed, his face was not washed, and his clothing was too small. Father's counsel also noted that Father attributed Ms.'s recent mental behaviors to Ms. having to be moved numerous times and being placed in a group home. Father believed that Ms.'s issues would be resolved if he were placed with the paternal aunt or paternal grandparents and that Ms. had stated his desire to be with his siblings and family. Father's counsel also argued that because Father had completed the majority of his case plan and had done everything that had been asked of him, visitations in a therapeutic setting were no longer necessary nor in Ms.'s best interest. For these same reasons, Father's counsel argued that Father's visits with B.B. and Ma. should be unsupervised and increased and that Father had acknowledged the mistakes he had made and had taken responsibility for his behavior with DPSS.

8

The juvenile court denied Father's request to move B.B. and Ma. out of their current relative placement, noting they were doing well. The hearing was, however, continued to June 23, 2014, because the court desired further information as to when Ms. could be moved out of the group home. The court also desired a plan for increasing Father's visits "in a safe context."

At the June 23, 2014 hearing, DPSS's counsel informed the court that Ms.'s status would be evaluated in August and upon a 90-day cycle to determine if he could be relocated to a less restrictive placement, and, if a change is recommended, DPSS intended to place Ms. with his siblings. Ms.'s counsel noted that the group home Ms. was placed at was "not a normal group home, not like others," and that they take younger children. Ms.'s counsel argued Ms. should not be moved any sooner than August and that changing his placement would not be to his best interest. Based on the best interest of the children, the juvenile court denied Father's request to place the children with the paternal grandparents, Father's request to receive visitation without the therapeutic setting condition, and Father's request to receive unsupervised visits with B.B. and Ma. This appeal followed.

II

DISCUSSION

Father argues the juvenile court abused its discretion in denying his section 388 petition. Specifically, he claims that it was in the best interest of Ms. to be placed with his paternal grandparents or paternal aunt and that it was in Ms.'s best interest to begin

9

visits with his father outside a therapeutic setting. He also argues that his significant progress in his case plan and appropriate visits were evidence unsupervised visits should have been granted with B.B. and Ma.

Section 388, subdivision (a), permits anyone having an interest in a dependent child to petition the juvenile court for a hearing to change, modify or set aside a previous order on the ground of changed circumstances or new evidence. A parent seeking to change an order of the dependency court bears the burden of proving by a preponderance of the evidence that (1) there is a change in circumstances warranting a change in the order, and (2) the change would be in the best interest of the child. (*In re S.J.* (2008) 167 Cal.App.4th 953, 959 [Fourth Dist., Div. Two].) "Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citations.] In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. [Citations.] The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order. [Citations.]" (*In re A.A.* (2012) 203 Cal.App.4th 597, 612 [Fourth Dist., Div. Two].)

The denial of a section 388 petition is reviewed for abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460-461.) The juvenile court's ruling will not be disturbed on appeal unless the trial court has exceeded the limits of discretion by making an arbitrary, capricious, or patently absurd determination, i.e., the decision exceeds the

10

bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) " ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citations.]' [Citations.]" (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.) "It is rare that the denial of a section 388 motion merits reversal as an abuse of discretion . . . ." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 522.) Having reviewed the record as summarized above, we conclude the juvenile court properly exercised its discretion by denying Father's section 388 petition.

Although the juvenile court did not make an express finding regarding Father's current circumstances, the evidence supports a finding that Father had not made a significant change in circumstances that led to the removal of the children by the time of the section 388 petition. While Father had completed his parenting program and had attended 10 counseling sessions, Father still had not addressed his domestic violence or anger issues that led him to physically abuse the boys. As part of his case plan, Father was required to attend and complete a domestic violence program to address his history and current issues of battery; and actively participate in a parenting program, a child abuse program, and counseling. There was no evidence to show Father had taken steps toward satisfying the domestic violence component of his case plan. In fact, the record shows that Father still had anger issues and was unable to maintain his composure in dealing with DPSS. The difficulty faced by Father in making his case in the juvenile court or on appeal is that Father had not addressed "the problem that initially brought the

11

child[ren] within the dependency system" so that the juvenile court could determine whether the problem was "removed or ameliorated" by the changes in circumstances advanced in Father's section 388 petition. (*In re A.A.*, *supra*, 203 Cal.App.4th at p. 612.)

Furthermore, besides arguments from Father's counsel, there was no new evidence presented to show that B.B. and Ma. desired unsupervised visits with Father; or that Ms. wanted visits with Father outside a therapeutic setting; or that Ms. wanted to live with paternal relatives; or that the paternal grandparents wanted custody of the children. Indeed, initially, on February 5, 2014, DPSS had made unsuccessful attempts to contact the paternal grandparents to inquire about the children's placements. Moreover, it appears that the paternal grandparents by the time of the section 388 hearing had not been fully approved to have the children placed in their home, since there was no evidence to show the paternal grandparents had followed through with DPSS's recommendations.

Even assuming arguendo Father established new evidence or a change in circumstances, Father failed to establish that a change in placement and visitation was in the children's best interest at the time of the section 388 hearing. In assessing the "best interests" component under section 388, we examine "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532, italics omitted.)

12

Here, although we agree with Father that it is in Ms.'s best interest to be placed with relatives and his siblings, there was no evidence to show that it was in his best interest to do so *at the time* of the section 388 hearing. Neither DPSS nor the juvenile court had foreclosed the possibility of moving Ms. from the group home and placing him with his siblings with relatives. However, at the time of the section 388 hearing, there was no evidence to suggest moving Ms. and providing him with visits outside a therapeutic setting was in Ms.'s best interest. The family came to the attention of DPSS due to Father having physically abused the boys. As a result of Father's use of corporal punishment, Ms. had issues with wetting his bed, he was afraid of his father and did not want to live with him, and he suffered from depression and anxiety. When Ms. was forced to see Father during an unauthorized unsupervised visit, Ms. was re-traumatized. Ms. and his siblings had been moved four times from January to April 2014, and had recently begun to make progress in their respective homes. At the time of the section 388 hearing, the group home had appeared to be serving Ms.'s needs, and the paternal aunt's home was serving B.B.'s and Ma.'s needs. Additionally, Father's visits with Ms. in therapy sessions were going well and the therapist had begun to work with Father and Ms. to improve their bond by extending the visits.

Likewise, there was no evidence to show that unsupervised visits were in B.B.'s and Ma.'s best interest at the time of the section 388 hearing. By the time of the section 388 hearing, Father had not addressed his anger issues or the domestic violence component of his case plan or ameliorated the problems that led to the children's

13

removal. DPSS had concerns that Father had not gained insight into what exactly had led to the removal of his children.

Accordingly, the juvenile court did not abuse its discretion in denying Father's section 388 petition.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:


McKINSTER_____
J.


MILLER_____
J.